IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

CIVIL CASE NO. 5:12cv137

| | |
|---|---|
| **RAYFORD LEWIS BURKE,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| **CARLTON JOYNER, Warden,**[1] ) | |
| **Central Prison** ) | |
| **Raleigh, North Carolina,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court upon Petitioner's Rayford Lewis Burke's Amended Petition for Writ of Habeas Corpus, 28 U.S.C. § 2254. (Doc. No. 56.)

**I.  RELEVANT BACKGROUND**

Burke was convicted and sentenced to death on April 1, 1993, in Iredell County Superior Court, for the first-degree murder of Timothy Andrew Morrison. Burke's conviction and death sentence were affirmed on direct appeal by the North Carolina Supreme Court. State v. Burke, 469 S.E.2d 901 (N.C. 1996).

Burke then sought state post-conviction relief by filing a "Motion for Appropriate Relief" ("MAR") in the Iredell County Superior Court ("the MAR court") on November 25, 1997. In succeeding years, Burke made seven additional filings, hereinafter referred to collectively with

---

[1] The Petition originally named Kenneth E. Lassiter, then-Warden of Central Prison, as Respondent. (See Docket No. 1.) In August, 2013, Carlton Joyner was appointed Warden of Central Prison. Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. foll. § 2254, and by operation of Federal Rule of Civil Procedure 25(d) (applicable to this proceeding pursuant to Rule 12 of the Rules Governing Section 2254 Cases), Carlton Joyner now appears as Respondent.

1

the original MAR as the "MAR."

On September 16, 2011, the State filed a "Motion for Summary Adjudication," and on November 14, 2011, the MAR court heard oral arguments on the State's motion. By written order, dated December 16, 2011, the court denied the MAR without holding an evidentiary hearing. The North Carolina Supreme Court denied Burke's petition for writ of certiorari on August 23, 2012. State v. Burke, 731 S.E.2d 138 (N.C. 2012).

On August 31, 2012, Burke's state post-conviction counsel, Gretchen M. Engel and Franklin E. Wells, Jr., filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on Burke's behalf. (Doc. No. 1.) Engel and Wells were appointed by the Court to represent Burke in his federal habeas proceedings. (Doc. No. 21.)

While the habeas Petition was pending before this Court, Burke filed a motion for appointment of independent, qualified counsel under Martinez v. Ryan, 132 S. Ct. 1309 (2012), Doc. No. 34, which the Court granted, appointing attorneys Marilyn G. Ozer and William W. F. Massengale to represent Burke under Martinez, Doc. No. 40. On April 18, 2015, Ozer and Massengale filed an Amended Petition for Writ of Habeas Corpus, adding three claims of ineffective assistance of trial counsel that either were not raised or were abandoned during state post-conviction proceedings. (Doc. No. 56.) Respondent filed an Answer, a Motion for Summary Judgment, and a Memorandum in Support, Doc Nos. 62-64, and Burke filed a Response to the Summary Judgment Motion, Doc. No. 65. Relevant to this Order is Burke's claim that trial counsel were ineffective for failing to object to the prosecution's use of peremptory strikes to remove three African-Americans from the jury pool.

## II. THE MARTINEZ EXCEPTION

Ordinarily, a petitioner is procedurally barred from obtaining federal habeas review of a

claim that he failed to raise and exhaust in state court. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72, 84–85 (1977). Under this procedural default doctrine, habeas review of the claim will be permitted only if the petitioner can demonstrate (1) cause for the default and prejudice resulting therefrom or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750.

In some circumstances, a petitioner may establish cause if he was represented by counsel whose performance was constitutionally ineffective under the standards established in Strickland v. Washington, 466 U.S. 668 (1984). See Coleman, 501 U.S. at 752; Murray v. Carrier, 477 U.S. 478, 488 (1986). In Coleman, however, the Supreme Court held that because "[t]here is no constitutional right to an attorney in state postconviction proceedings," a federal habeas "petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings" to establish cause. Coleman, 501 U.S. at 752.

In Martinez v. Ryan, the Supreme Court announced a "narrow exception" to the Coleman rule. 132 S. Ct. at 1315. Specifically, the Court held that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was [constitutionally] ineffective.

Id. at 1320. Shortly thereafter, the Supreme Court held that the Martinez exception also applies to ineffective assistance of trial counsel claims that state law might, on its face, permit to be brought on direct appeal, if the "structure and design" of the state system "in actual operation . . . make it 'virtually impossible'" to do so. Trevino v. Thaler, 133 S. Ct. 1911, 1915 (2013).

### III. DISCUSSION

#### A. Applicability of Martinez to North Carolina Cases

3

In Fowler v. Joyner, the Fourth Circuit Court of Appeals recognized that North Carolina does not fall neatly within Martinez or Trevino. 753 F.3d 446, 461 (4th Cir. 2014) cert. denied, 135 S. Ct. 1530 (2015). Under North Carolina law, ineffective assistance of trial counsel claims that are apparent from the cold record must be brought by the prisoner on direct appeal. See N.C. Gen. Stat. § 15A–1419(a)(3), (b) (requiring denial of an MAR if "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the . . . motion but did not do so"); State v. Fair, 557 S.E.2d 500, 524 (N.C. 2001) (Ineffective assistance of trial counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing."). As to those claims, "the state collateral review proceeding [is not] the initial review proceeding in respect to the . . . claim," and the Martinez exception to Coleman will not apply. Fowler, 753 F.3d. at 463 (citation and internal quotation marks omitted).

Ineffective assistance of trial counsel claims that are not apparent from the trial record, however, "should be considered through motions for appropriate relief and not on direct appeal." Id. (quoting State v. Stroud, 557 S.E.2d 544, 547 (N.C. Ct. App. 2001)) (internal quotation marks omitted); see also State v. Long, 557 S.E.2d 89, 93 (N.C. 2001) ("Thus, while in some situations a defendant may be required to raise an [ineffective assistance of trial counsel] claim on direct appeal, a defendant will not be required to do so in all situations."). These claims "will fall within the Martinez exception." Fowler, 753 F.3d at 463.

The Fourth Circuit summarized the rule announced in Martinez thusly:

a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2)

4

the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding."

Fowler v. Joyner, 753 F.3d at 461 (quoting Trevino, 133 S. Ct. at 1918 (internal quotation marks, alterations, and emphasis omitted)). In North Carolina, federal habeas courts must "determine, on a case-by-case basis, whether the particular ineffective-assistance-of-trial-counsel claim identified, regardless of its merit, is nonetheless procedurally defaulted because it could have been and should have been raised on direct appeal." Fowler, 753 F.3d at 463.

### B. Burke's Ineffective Assistance of Trial Counsel Claim

Burke claims that trial counsel were ineffective for failing to object to the prosecution's use of peremptory strikes to remove three African-Americans from the pool of eligible jurors. Both parties agree that this claim was not raised on direct appeal or during state post-conviction proceedings. The claim, therefore, is unexhausted, and if Burke returned to the state courts and attempted to exhaust it now, the claim would be procedurally barred. See N.C. Gen. Stat. § 15A–1419(a). Consequently, this ineffectiveness claim is procedurally defaulted and may be reviewed by the federal habeas courts only if Burke can demonstrate cause for the default and prejudice resulting therefrom or that the failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. Relying on Martinez and Trevino, Burke asserts ineffective assistance of state post-conviction counsel as "cause" for the default.

The first step for this Court in addressing whether Burke's claim falls within the Martinez exception is to determine whether it could have been raised on direct appeal. See Fowler, 753 F.3d at 463. If Burke could have raised the claim on direct appeal, it will not fall under the

5

Martinez exception and will not be entitled to review by this Court.  Id.

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim.  466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, "the defendant must show that the deficient performance prejudiced the defense," id., by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

In the instant case, the prosecution used peremptory strikes to remove three of the five eligible African-Americans in the venire.  Another of the five was struck for cause, and the other was passed by the prosecution but struck by the defense.  Burke was tried by an all-white jury. [2]

In Batson v. Kentucky, 476 U.S. 79, 89 (1986), the Supreme Court held that the use of peremptory strikes to remove jurors on the basis of their race violates the Fourteenth Amendment.  Batson challenges follow a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Snyder v. Louisiana, 552 U.S. 472, 476–77 (2008) (internal quotation marks and alterations omitted).

---

[2] Because trial counsel did not object to the strikes, no hearing was held, and the prosecutor did not have to provide race-neutral reasons for striking these jurors.  See Snyder v. Louisiana, 552 U.S. 472, 476–77 (2008).  Consequently, the races of those questioned and excused, struck, or accepted during jury selection do not appear in the trial transcript.  The facts cited here come from state post-conviction counsel's cross-reference of the trial transcript with juror questionnaires, which contained the jurors' demographic information, including race.  (Am. Pet. 9, Doc. No. 56.)  These questionnaires were used by the attorneys during jury selection, returned to the clerk of court after the jury was selected, and kept under seal as part of the court record.  (Trial Tr. Vol. I 61, Doc. No. 29-4.)

6

Within the Strickland framework, Burke must show that his trial counsel's failure to raise a Batson challenge to the prosecution's strike of the three African-American jurors fell below an "objective standard of reasonableness." Id. at 688. Burke also must show that had counsel objected to the prosecution's peremptory strikes, there is a reasonable probability that counsel could have advanced a successful argument that the strikes violated Batson. See United States v. Flowers, 616 F. App'x 108 (4th Cir. 2015) (unpublished) (citing Davis v. Ayala, 135 S. Ct. 2199, 2201, 2204–06 (2015) (holding that a defendant suffers actual prejudice from the exclusion of counsel from a Batson proceeding if counsel's presence at the proceeding would have permitted counsel to advance a potentially successful argument against the excusal of the juror); Strickland, 466 U.S. at 668, 687).

Thus, whether Burke could have raised this ineffective assistance of trial counsel claim on direct appeal cannot be determined without first resolving whether Burke could have raised a Batson claim on direct appeal. To answer the latter question, this Court must look to the state courts, where Burke raised a Batson claim in post-conviction collateral proceedings.

### C. The North Carolina Racial Justice Act

In 2009, the state legislature passed the North Carolina Racial Justice Act ("RJA"). N.C. Gen. Stat. §§ 15A-2010 to 15A-2012, S.L. 2009-464, § 1, eff. Aug. 11, 2009. The statute provided that "[n]o person shall be subject to or given a sentence of death or shall be executed pursuant to any judgment that was sought or obtained on the basis of race." Id. The statute also provided that a capital prisoner could raise a claim under the RJA by way of a post-conviction MAR in state superior court, which was required to hold a hearing on the claim. See § 15A-2012(a)(1)-(2) (2009). If the court found "that race was a significant factor in decisions to seek or impose the sentence of death in the county, the prosecutorial district, the judicial division, or

the State at the time the death sentence was sought or imposed," the court was required to vacate the movant's death sentence and resentence him to life imprisonment without the possibility of parole. Id. at § 15A-2012(a)(1).

On August 6, 2010, Burke filed an MAR pursuant to the RJA ("RJA MAR") in Iredell County Superior Court. In 2012, the North Carolina Legislature amended the RJA, eliminating the mandatory hearing requirement, and requiring that a movant demonstrate that race was a significant factor in the decision to seek or impose the death sentence in the movant's own case. See § 15A-2011(f)-(g), as amended by S.L. 2012-136, § 3, eff. July 2, 2012. Burke filed an amended MAR ("RJA AMAR"), on or about August 30, 2012, to conform to the RJA's new requirements.

While Burke's RJA MAR and RJA AMAR were pending in the Iredell County Superior Court, the North Carolina Legislature repealed the Racial Justice Act. See Session Law 2013-154, § 5(a), eff. June 19, 2013. On November 26, 2013, Burke filed a second amendment to his RJA MAR titled: "Amendment to RJA MAR Based on Batson v. Kentucky, and New Evidence of Intentional Discrimination" ("RJA AMAR 2"). (Doc. No. 62-1.)

On June 3, 2014, the Iredell County Superior Court dismissed Burke's RJA MAR and the first amendment to it. On July 31, 2014, the court dismissed Petitioner's RJA AMAR 2. In so doing, the court held that Burke was in a position to raise his Batson claim on direct appeal or in a previous MAR and that it, therefore, was procedurally barred under N.C. Gen. Stat. § 15A–1419(a)(1) & (3). (Order Dismissing & Den. RJA AMAR 2 ¶ 25, Doc. No. 62-2.) The court also denied the Batson claim on the merits, holding that Burke had "failed to show discrimination in his own case." (Order Dismissing & Den. RJA AMAR 2, supra.)

On August 29, 2014, Burke filed a Petition for Writ of Certiorari in the North Carolina

8

Supreme Court, seeking review of the Iredell County Superior Court's dismissal of his RJA MAR, RJA AMAR, and RJA AMAR 2. (Cert. Pet., State v. Burke, No. 181A93-4, 2014 WL 4536961 (N.C. filed Aug. 29, 2014)). On October 29, 2014, the State filed a Response, urging the court to grant certiorari review and resolve some of the state and federal constitutional issues remaining in the wake of the legislature's repeal of the RJA. (State's Resp. to Cert. Pet., State v. Burke, No. 181A93-4 (N.C. filed Oct. 29, 2014), available at https://www.ncappellatecourts.org (follow NC Appellate Courts Electronic Filing Site link))

One of the questions raised in Burke's certiorari petition is whether "the Racial Justice Act repeal provide[s] for merits review of constitutional claims of race discrimination not previously litigated?" (Cert. Pet., State v. Burke, No. 181A93-4, supra.) The North Carolina Supreme Court has not ruled on Burke's Petition or the State's Response. Burke's Batson claim, therefore, is not yet exhausted in the state courts.

### D. Issues of Comity

The doctrine of comity "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Rhines v. Weber, 544 U.S. 269, 274 (2005). The exhaustion doctrine, codified in § 2254, furthers the policy of comity by giving "the state courts the first opportunity to correct federal constitutional errors and minimizes federal interference and disruption of state judicial proceedings." See Rose v. Lundy, 455 U.S. 509, 513-14 (1982).

Admittedly, the North Carolina Supreme Court is not being asked to review an ineffective assistance of counsel claim. Nevertheless, whether Burke's ineffective assistance of counsel claim falls under the Martinez exception in federal habeas depends upon the procedural

9

posture of Burke's state Batson claim. The question raised in the certiorari petition goes directly to whether the Batson claim was procedurally barred in the state courts. If so, then the reason it was barred could also determine whether the Martinez exception applies to Burke's habeas ineffectiveness claim.[3]

On the other hand, if the Batson claim was not barred, then whether Burke has advanced a "substantial" ineffectiveness claim as required by Martinez, 132 S. Ct. at 1312, will depend upon the merits of the Batson claim. A merits review of the claim by the state court must be accorded deference, as mandated by § 2254(d). Likewise, any findings of fact by the state court would enjoy a presumption of correctness under the rules set out in § 2254(e).

"District courts . . . ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion." Rhines, 544 U.S. at 276 (2005). This Court does not believe that holding these habeas proceedings in abeyance pending exhaustion of Burke's Batson claim, would frustrate the Anti–Terrorism and Effective Death Penalty Act's objectives of encouraging comity, finality, and federalism. See Miller–El v. Cockrell, 537 U.S. 322, 337 (2003). Whether a state statute and/or its repeal created a mechanism by which death row inmates could raise previously unlitigated federal constitutional claims of racial discrimination is a matter of state law, best decided by the state court. The Court finds it particularly significant that the State has urged the North Carolina Supreme Court to grant Burke certiorari to resolve this question and

---

[3] The Iredell County Superior Court held that Burke's Batson claim was procedurally barred under both N.C. Gen. Stat. § 15A–1419(a)(1) and (a)(3). (Order Dismissing & Den. RJA AMAR 2 ¶ 25, Doc. No. 62-2.) The distinction between the two subsections is important for Martinez purposes. Section 15A–1419(a)(3) allows denial of an MAR if the defendant was in a position to raise the ground at issue on direct appeal but did not do so. As discussed previously, in cases arising out of the North Carolina courts, the Martinez exception does not apply to ineffective assistance of counsel claims that could have been raised on direct appeal. See discussion, supra, at Section III A, pp. 4-5. Section 15A-1419(a)(1) allows denial of an MAR if the defendant was in a position to raise the ground at issue in a previous MAR but did not do so. In such a situation, the Martinez exception will apply, if the petitioner can meet all of Martinez's other requirements. See Fowler, 753 F.3d at 463.

two others involving the RJA.

Furthermore, a Batson violation is not subject to harmless error analysis. See Winston v. Boatwright, 649 F.3d 618, 627–29 (7th Cir. 2011) (holding that a Batson violation is structural and requires automatic reversal); Forrest v. Beloit Corp., 424 F.3d 344, 349 (3d Cir. 2005) ("Harmless error analysis . . . does not apply to . . . [a] Batson challenge.") (citing Ramseur v. Beyer, 983 F.2d 1215, 1225 n.6 (3d Cir. 1992) (en banc))); Tankleff v. Senkowski, 135 F.3d 235, 248 (2d Cir. 1998) (holding that a Batson violation is a structural error not subject to harmless error review) ; Ford v. Norris, 67 F.3d 162, 170–71 (8th Cir. 1995) (same); see also United States v. Legrand, 483 F. App'x. 771, 777 n.2 (4th Cir. 2012) (unpublished) (declining to conduct harmless error analysis of alleged Batson violation). Should the state supreme court grant certiorari and resolve Burke's Batson claim in his favor, it would moot his entire habeas petition or, at a minimum, his death sentence.[4]

Lastly, Burke's Batson claim is at the final stage for exhaustion purposes. Therefore, a stay will not be open-ended.

**IT IS, THEREFORE, ORDERED** that:

1. Action in habeas case 5:12cv137 will be **STAYED AND HELD IN ABEYANCE** pending a decision by the North Carolina Supreme Court on Burke's petition for writ of certiorari;

2. Within seven (7) days of the North Carolina Supreme Court granting or denying his certiorari petition, Burke's post-conviction counsel shall file a notice in this Court of the

---

[4] While a Batson violation would require automatic reversal of Burke's conviction and sentence, see Winston v. Boatwright, 649 F.3d 618, 627–29 (7th Cir. 2011), the RJA allowed only for the commutation of a death sentence to one of life in prison without the possibility of parole, see N.C. Gen. Stat. § 15A-2011(g) (amended) (2012).

11

state court's action; and

3. The Clerk of Court shall substitute Carlton Joyner for Kenneth E. Lassiter as Respondent in this matter.

**SO ORDERED.**

Signed: February 4, 2016

Richard L. Voorhees
United States District Judge